UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|                                    |   |                                |
|------------------------------------|---|--------------------------------|
| SONNY AUSTIN RAMDEO,               | ) |                                |
|                                    | ) |                                |
| Plaintiff,                         | ) |                                |
|                                    | ) |                                |
| v.                                 | ) | Civil Action No. 19-114 (ABJ) |
|                                    | ) |                                |
| UNITED STATES                      | ) |                                |
| DEPARTMENT OF JUSTICE,             | ) |                                |
|                                    | ) |                                |
| Defendant.                         | ) |                                |

## MEMORANDUM OPINION

In this action brought *pro se*, plaintiff, a federal prisoner, claims that the Bureau of Prisons ("BOP") has improperly withheld records in violation of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Defendant has moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure [Dkt. # 13]. Upon consideration of the parties' submissions and the entire record, the Court finds that defendant has complied with the FOIA. So, for the reasons explained below, defendant's motion will be granted.

## BACKGROUND

Plaintiff is incarcerated at the Allenwood Federal Correctional Institution (FCI) in White Deer, Pennsylvania. In a FOIA request to BOP dated May 1, 2018, plaintiff sought records from "'the files of FCI Coleman Low' where he was incarcerated" from May 9, 2017 through March 22, 2018. Decl. of BOP Attorney John E. Wallace ¶ 3 & Ex. A. The 15-part request sought a variety of information, including investigatory records, reports "of evidentiary or scientific information," records pertaining to plaintiff, and records pertaining to three staff members, Unit

1

Manager Marcel Ramos, Special Investigative Supervisor J. Rittenhouse, and Special Housing Unit Officer B. Solow. *Id.* ¶¶ 3-4.

On June 25, 2018, BOP "issued an acknowledgment letter," informing plaintiff that his request was sent to the Northeast Regional Office ("NERO") for processing that "could take up to 9 months[.]" Compl. ¶ 19. In August 2018 and October 2018, plaintiff requested updates, and on December 3, 2018, he submitted an appeal to the Office of Information Policy (OIP) "indicating [that] the BOP [was] improperly and intentionally delaying the response to [his] request." *Id*. ¶¶ 21-23. Having received no response from OIP, *see id*. ¶ 23, plaintiff filed this civil action on January 11, 2019.

By letter of May 31, 2019, BOP released 150 responsive pages to plaintiff, 107 of which contained redactions, and it withheld 76 pages completely. Wallace Decl., Ex. B. BOP withheld information under FOIA exemptions 2, 5, 6, 7(C), 7(E) and 7(F), codified in 5 U.S.C. § 552(b). *Id*. Plaintiff wrote back on June 11, 2019. He expressed his dissatisfaction with the response and "clarifie[d] the intent of his request" as seeking records relating "to a[n] investigation and referral from the Office of the Inspector General in which [he] was retaliated against by staff member[s]" Rittenhouse and Ramos. Def.'s Statement of Undisputed Material Facts ("SOF") ¶ 6, quoting Wallace Decl., Ex. C at 1. Plaintiff stated that Rittenhouse "fabricated documentation to retaliate" against him "and transferr[ed]" him "to another institution[,] and I am seeking the records related to those acts which constitute ethical violations[.]" *Id*.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of the pleadings, . . . together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id*. at 324 (internal quotation marks omitted). The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id*. at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).

When considering a motion for summary judgment under FOIA, the court must conduct a *de novo* review of the record. *See* 5 U.S.C. § 552(a)(4)(B). The court may grant summary judgment based on information provided in an agency's affidavits or declarations when they are "relatively detailed and non-conclusory," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted), and "not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard*, 926 F.2d at 1200 (citation and internal quotation marks omitted).

## ANALYSIS

FOIA requires government agencies to release records upon request in order to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). The statute provides that: "each agency, upon any request

3

for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person," 5 U.S.C. § 552(a)(3)(A), unless the records fall within one of nine narrowly construed exemptions. *See* § 552(b); *FBI v. Abramson*, 456 U.S. 615, 630-31 (1982). This framework "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003), citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989).

When an agency withholds documents or parts of documents, it must explain what it is withholding and specify the statutory exemptions that apply. *See Vaughn v. Rosen*, 484 F.2d 820, 825–28 (D.C. Cir. 1973). Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears "logical" or "plausible." *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007) (citations omitted). An inadequate search may also constitute an improper withholding. *See Maydak v. U.S. Dep't. of Justice*, 254 F. Supp. 2d 23, 44 (D.D.C. 2003). So, when an agency's search is questioned, the agency prevails on summary judgment if it shows through a non-conclusory declaration that it made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

Defendant argues that summary judgment is warranted in its favor because BOP conducted a search reasonably calculated to uncover all relevant documents, and all non-exempt responsive records have been released. Def.'s Mem. at 5-16. Plaintiff maintains that material facts are in genuine dispute with regard to both the adequacy of the search and the asserted exemptions. *See generally* Opp'n [Dkt. # 21].

### A. BOP's Search for Records

Plaintiff asserts that defendant "failed to identify the specific systems it searched for each record." Opp'n at 1. But BOP's declarant has provided a comprehensive description of BOP's record systems and databases, and he has reasonably explained why the ones searched were most likely to locate responsive records. *See* Wallace Decl. ¶¶ 7-15.

Among the files searched were the Prison Intelligence Records System and database TRUINTEL, which "is the system that stores everything in relation to inmate intelligence," SOF ¶ 7, n.9; the Inmate Administrative Remedy Records System; the Inmate Central Records System, which includes essentially all "information regarding an inmate" and "is maintained at the inmate's current . . . institution of confinement," SOF ¶¶ 11-12; and the Federal Tort Claims Act Records System.

The declarant avers that upon receiving plaintiff's request on June 25, 2018, NERO's Legal Office "sent a request-for-documents e-mail" to FCI Allenwood. *Id*. ¶ 16. An SIS Technician searched "the TRUVIEW [inmate telephone records], TRUSCOPE [incidents, contraband, and inmate activities], and TRUINTEL databases by plaintiff's name and inmate register number, identified BOP's Office of Internal Affairs ("OIA") as a location likely to have responsive records, and forwarded responsive documents to NERO's Legal Office. Wallace Decl. ¶ 16. A case manager at the Allenwood facility also searched plaintiff's Inmate Central File and forwarded a copy of plaintiff's presentence investigation report, which was determined to be non-responsive. *Id*.

After inheriting plaintiff's FOIA request on May 3, 2019, BOP's declarant revisited the search. He asked the SIS Technician about the search parameters and determined that plaintiff's request "for reports of evidentiary or scientific information could be addressed with records

5

regarding [his] urinalysis testing for contraband substances," which located a responsive document. *Id*. ¶ 19. In addition, the declarant "personally traveled" to FCI Allenwood "to learn about" the TRUINTEL and TRUSCOPE databases, *id.* ¶ 20, asked BOP's OIA "to search for . . . any investigations or files concerning" plaintiff, and initiated searches at FCI Coleman, all of which located responsive records. *Id*. ¶¶ 21-27.

After "cross-referencing the results from separate databases, and chasing all available leads concerning responsive records," BOP's declarant was satisfied that he "had conducted a reasonably adequate search in response" to plaintiff's FOIA request, *id*. ¶ 28, and the Court agrees. The declarant has shown that he "liberally construed the request, followed leads," and "searched all areas reasonably likely to produce responsive record," eventually "finding only duplicates or deadends." *Id*. At that point, the declarant reasonably "concluded that no areas remained to be searched that were likely to render responsive documents." *Id*.

Given that showing, the Court cannot find the search to be deficient for failure to identify the specific systems searched.

Plaintiff also asserts that the search was inadequate because the declarant "made no attempt to reference SENTRY[.]" Opp'n, SOF ¶ 34. But as the declarant has explained, while SENTRY

> is frequently the subject of requests[,] it is an electronic media application that is comprised of data of activities within the multiple BOP published systems of records. Inmate data is keyed into this database so that BOP employees nationwide can easily access certain inmate information. So, while a SENTRY report is an agency record, it is typically an electronic abstract of other record systems.

Wallace Decl. ¶ 8. Plaintiff has produced no evidence to create a genuine factual dispute with respect to the reasonableness of defendant's searches, including the more than adequate search for records at FCI Coleman Low. *See* Wallace Decl. ¶¶ 22-26; Pl.'s SOF ¶ 34 (positing that the

6

declarant "could have contacted" plaintiff's former case manager at Coleman Low "who has first-hand facts about the events"). Therefore, defendant is entitled to summary judgment on the search question.

### B. FOIA Exemptions

As explained in the government's declarations and *Vaughn* indices, information was withheld under FOIA exemptions 5, 6, and 7.

**Exemption 5**

FOIA Exemption 5 permits agencies to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5*); see also U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (holding that a record may be withheld under Exemption 5 only if "its source [is] . . . a [g]overnment agency, and it . . . fall[s] within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it"). It "encompass[es] the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context," including (1) the attorney-client privilege, (2) the executive "deliberative process" privilege, and (3) the attorney work-product privilege. *Taxation with Representation Fund v. IRS*, 646 F.2d 666, 676 (D.C. Cir. 1981). The agency seeking to withhold a document bears the burden of showing that an exemption applies. *Natural Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000).

First, "[t]he deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery," and its purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion

among those who make them within the [g]overnment." *Klamath*, 532 U.S. at 8–9, quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). Thus, the privilege only "protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006); *accord McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331, 339 (D.C. Cir. 2011). "[A] document [is] predecisional if 'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultative process.' " *Judicial Watch*, 449 F.3d at 151, quoting *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

Second, the attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services, and "is not limited to communications made in the context of litigation or even a specific dispute." *Coastal States*, 617 F.2d at 862. The privilege also protects communications from attorneys to their clients that " 'rest on confidential information obtained from the client.' " *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir.1997), quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984); *see also Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 254 (D.C. Cir. 1977). In the FOIA context, the agency is the "client" and the agency's lawyers are the "attorneys" for the purposes of attorney-client privilege. *See In re Lindsey*, 148 F.3d 1100, 1105 (D.C. Cir. 1998), citing *Coastal States*, 617 F.2d at 863.

Finally, the attorney work product privilege protects materials that reflect the " 'mental processes of the attorney,' " *Klamath*, 532 U.S. at 8, quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975), when the materials were " 'prepared in anticipation of litigation or for trial.' " *Judicial Watch, Inc. v. DOJ*, 432 F.3d 366, 369 (D.C. Cir. 2005), quoting Fed. R. Civ. P. 26(b)(3). An agency can satisfy the "in anticipation of litigation" standard by "demonstrating that one of its

lawyers prepared a document in the course of an investigation that was undertaken with litigation in mind," even if no specific lawsuit has begun. *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1202 (D.C. Cir. 1991).

BOP withheld as attorney work product documentation of "investigations conducted in response to Mr. Ramdeo's administrative tort claim filings, which were created for Supervisory Attorney Jeffrey Middendorf." Wallace Decl. ¶ 31; *Vaughn* Index, Doc. # 3. The investigations "were prepared for a BOP attorney in anticipation of litigation, and "they informed the legal strategies of the DOJ attorneys who are litigating the pending claims on behalf of the Government." Wallace Decl. ¶¶ 32-33. "The circuit's case law is clear that '[t]he work-product doctrine simply does not distinguish between factual and deliberative material.'" *Judicial Watch, Inc.,* 432 F.3d at 371, quoting *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1187 (D.C. Cir. 1987). "[I]f a document is fully protected as work product, then segregability is not required." *Id*. So, BOP's withholding of attorney work product records is justified, notwithstanding plaintiff's speculative allegations of misconduct. Opp'n, SOF ¶ 12 [Dkt. # 21].

### Exemptions 6 and 7

FOIA Exemption 6 exempts from mandatory disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). FOIA Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure would cause one of the enumerated harms set out in the exemption's subparts. 5 U.S.C. § 552(b)(7); *Abramson*, 456 U.S. at 622. Exemptions 6 and 7(C) concern personal privacy interests, and they are often cited together as justification for withholding the same records. Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to

constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Exemption 7(C)'s threshold of harm is lower than Exemption 6's "clearly unwarranted" requirement.

Defendant redacted the identifying information of "third-party inmates, citizens, and line-level BOP staff" under both exemptions, but it concedes that Exemption 7(C) does not apply to "the tort claim filings and investigations," SOF ¶ 33, n.18, so it now relies on Exemption 6 only to justify "the minimal redactions of staff names" from those documents, Wallace Decl. ¶ 34, n.19. "Congress' primary purpose in enacting Exemption 6 was to protect *individuals* from the injury and embarrassment that can result from the unnecessary disclosure of *personal* information." *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008), quoting *In United States Department of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982) (emphases in original). BOP's declarant explains that the affected individuals "have strong privacy interests in avoiding unwanted public attention and the harassment, embarrassment, and derogatory inferences that spring from having their identities made public in prison records," and that such publicity "could subject prison staff to unnecessary, unofficial questioning concerning prison matters." Wallace Decl. ¶ 34. In contrast, BOP did not redact the names of "BOP attorneys and staff at the associate warden level and above" since "their more public-facing official duties" diminish "their legitimate privacy expectation." *Id*. ¶ 35.

BOP's declarant avers that "[e]ach time exemption (b)(6) was used, the privacy interest of the third-party individual was weighed against the public's interest" and "not, at any place in [the] Request or Complaint" has plaintiff "identified a specific public interest." *Id*. ¶ 36. Whether the latter is accurate will be discussed under Exemption 7(C) since "the privacy inquiry of Exemptions 6 and 7(C) [are] essentially the same." *Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108, 1125 (D.C. Cir. 2004).

**Exemption 7**

Based on plaintiff's June 2019 clarifying letter, and the complaint allegations, defendant has reasonably interpreted plaintiff's request as seeking "to obtain records from investigatory enforcement proceedings of staff he formally accused of misconduct." Wallace Decl. ¶ 37. And BOP's declarant has dutifully differentiated the responsive records that reasonably satisfy the threshold law enforcement requirement, *see id*. ¶¶ 44-50, from those that do not, *id*. ¶ 35.

Defendant BOP has invoked several prongs of Exemption 7, related to law enforcement records, in withholding certain records. As a threshold matter, "[l]aw enforcement entails more than just investigating and prosecuting individuals after a violation of the law," and it "includes… proactive steps designed to prevent criminal activity and to maintain security." *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015) (internal quotation marks and citation omitted) (ellipsis in original).

*Exemption 7(C)*

In determining whether Exemption 7(C) applies to particular information, the Court must balance an individual's interest in privacy against the public interest in disclosure. *See ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011). The privacy interest at stake belongs to the individual, not the government agency, *see Reporters Comm*., 489 U.S. at 763-65, and an individual has a "strong interest in not being associated unwarrantedly with alleged criminal activity." *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.' " *Davis v. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992), quoting *Reporters Comm*., 489 U.S. at 773. It is a FOIA requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant. *See Nat'l*

*Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). The Court of Appeals has explained that

> [a]s a result of [e]xemption 7(C), FOIA ordinarily does not require disclosure of law enforcement documents (or portions thereof) that contain private information . . . . [because] privacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated . . . . Moreover, the Supreme Court has made clear that requests for such third party information are strongly disfavored. That is particularly true when the requester asserts a public interest—however it might be styled— in obtaining information that relates to a criminal prosecution.

*Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir. 2011) (citations and internal quotation marks omitted).

As indicated above under Exemption 6, defendant redacted the names of third-party inmates, "line-level BOP staff and former staff," and on one page the "personally identifiable information" of "a targeted staff member." Wallace Decl. ¶¶ 54, 56; *Vaughn* Index, Doc. # 4 p. 61. The declarant explains that the release of such information "would or could cast these individuals in an unfavorable or negative light, causing irreparable damage to reputations, embarrassment, harassment, threats of reprisal, comment, speculation, and stigma." Wallace Decl. ¶ 52.

The government has justified withholding third-party information. Therefore, the Court must "weigh the 'privacy interest in non-disclosure against the public interest in the release of the records.'" *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999), quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989). The Court of Appeals instructs:

> The public interest to be weighed against the privacy interest in this balancing test is the extent to which disclosure would serve the core purposes of the FOIA by contribut[ing] significantly to public understanding of the operations or activities of the government. Thus, unless a FOIA request advances the citizens' right to be informed about what their government is up to, no relevant public interest is at issue.

*Nat'l Ass'n of Home Builders*, 309 F.3d at 33-34 (internal quotation marks and citations omitted) (alteration in original). To trigger the balancing requirement, plaintiff must demonstrate the requisite level of public interest by producing evidence of official misconduct "that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish*, 541 U.S. at 174. Otherwise, there is no "counterweight on the FOIA scale for the court to balance against the cognizable privacy interests in the requested records." *Id*. at 174-75.

Plaintiff points to his Exhibit A as evidence that BOP has "a practice, pattern and custom of engaging in misconduct," which he asserts outweighs the privacy interests of the individuals whose identities are protected in this case. Opp'n, SOF ¶ 14. Plaintiff's exhibit appears to be an article from Prison Legal News reporting on a memorandum released on January 2, 2019, by the U.S. House Subcommittee on National Security, which concluded that high-level BOP officials had engaged in abusive misconduct and retaliation. According to the article, the subcommittee had found that "the lenient treatment" accorded BOP's senior officials "was in marked contrast to the harsh punishments that rank-and-file prison employees often received for minor infractions," and the subcommittee's "memorandum did not address the impact of misconduct by BOP officials on federal prisoners[.]" Pl.'s Ex. A.

While potential misconduct by prison officials is a serious matter, the relevance of plaintiff's exhibit to the particular matters at hand is questionable at best. Plaintiff does not dispute that his "allegations concern only individual actions by line-level BOP staff and former staff," and that "[n]o staff member in a significant leadership or policy-making capacity is involved." Wallace Decl. ¶ 56. Furthermore, the withheld names in this case do not include "staff at the associate warden level and above." Wallace Decl. ¶ 35. So, plaintiff's "evidence" is "simply not very probative" of BOP's "behavior or performance." *Mays v. Drug Enforcement Admin*., 234 F.3d

1324, 1327 (D.C. Cir. 2000) (internal quotation marks and citation omitted). Since, as the Supreme Court has instructed, "[a]llegations of government misconduct are easy to allege and hard to disprove, . . . courts must insist on a meaningful evidentiary showing" of a public interest. *Favish*, 541 U.S. at 175 (citation internal quotation marks and citation omitted). Otherwise, as the Court concludes here, the balancing test is simply not "in[] play." *Id.* As for the redactions under Exemptions 6 and 7(C), then, the government is entitled to summary judgment.

*Exemption 7(E)*

Exemption 7(E) authorizes an agency to withhold

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E). "Under [D.C. Circuit] precedents, [e]xemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" *Blackwell*, 646 F.3d at 42, quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009).

BOP applied this exemption to redact from a "TRUFONE report [certain] call data from October and November 2013." Wallace Decl. ¶ 58; *Vaughn* Index, Doc. # 6, p. 77 (describing withheld information as "call information maintained for investigative purposes"). The report includes locations and numbers of plaintiff's callers, but it also contains information as to whether "calls were locked possibly for inspection or investigation and monitored." Wallace Decl. ¶ 58

(parenthesis omitted). BOP redacted notations that if disclosed could "warn an inmate about whether he is under investigation, what level of scrutiny is being placed on his communications, and whether past calls were preserved." Wallace Decl. ¶ 58. The declarant explains how such information could reasonably assist the inmate with circumventing the law by, *inter alia*, devising a plan to smuggle in contraband or to escape. *See id*. Therefore, summary judgment is granted as to the Exemption 7(E) withholdings.

*Exemption 7(F)*

Exemption 7(F) protects from disclosure information in law enforcement records that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). The "phrase 'any individual' makes clear that Exemption 7(F) . . . shields the life or physical safety of any person." *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 525 (D.C. Cir. 2015). The Court of Appeals has observed that like Exemption 7(E), the language of Exemption 7(F) "is very broad," and it "does not require that a particular kind of individual be at risk of harm; 'any individual' will do." *Pub. Employees for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 205 (D.C. Cir. 2014) (citation omitted). In addition, "[d]isclosure need not definitely endanger life or physical safety; a reasonable expectation of endangerment suffices." *Id*.

BOP applied this exemption "in tandem with" Exemption 7(E) "to protect staff, inmates and visitors." Wallace Decl. ¶ 59. It also applied Exemption 7(F) to information redacted from an Administrative Detention Order that identifies the need for and the time and date of an inmate's admission to restricted housing, *Vaughn* Index, Doc. # 4, pp. 41-53; and information redacted from SENTRY Inmate Profile reports, which provide "a snapshot of almost all relevant information regarding an inmate" including "housing assignments, religious preferences, medical restrictions,

and release preparation," *Vaughn* Index, Doc #4 pp. 62-63. BOP's declarant has explained "in innumerable way[s], taking into account inmate ingenuity" how the release of the redacted information could place individuals in harm's way. *See* Wallace Decl. ¶¶ 58-61. Therefore, summary judgment is granted on the Exemption 7(F) withholdings.

## C. Record Segregability

BOP's publicly filed declaration asserts that plaintiff has been provided "all reasonably segregable nonexempt information" and that the withholdings were "narrowly tailored to protect only the exempt material[.]" Wallace Decl. ¶ 63. The declarant also asserts correctly that the attorney work product materials "are not amenable to segregability." *Id*. The declarant explained that "[f]urther description" of the withheld information . . . could identify the actual exempt information the BOP has protected." *Id*. Consequently, defendant was permitted to file under seal an *ex parte* declaration and *Vaughn* Index describing the documents that were withheld in full [Dkt. # 18]. The Court has reviewed those submissions *in camera* and finds the withholdings under exemptions 2, 6, 7(C), 7(E), and 7(F) to be justified.

## CONCLUSION

For the foregoing reasons, the Court grants defendant's motion for summary judgment. A separate Order accompanies this Memorandum Opinion.

*[signature: Amy B Jackson]*

AMY BERMAN JACKSON
DATE: March 25, 2020                        United States District Judge